**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| LANDMARK TECHNOLOGY, LLC, | Civil Action No. 6:13-cv-00411-MHS-JDL |
| Plaintiff | |
| v. | Jury Trial Demanded |
| iROBOT CORPORATION, | |
| Defendant. | |

**iROBOT CORPORATION'S ANSWER AND COUNTERCLAIMS TO LANDMARK TECHNOLOGY, LLC'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendant iRobot Corporation ("iRobot") hereby submits this Answer and affirmative and other defenses to Plaintiff Landmark Technology, LLC's ("Landmark" or "Plaintiff") Complaint for Patent Infringement ("Complaint"), as well as its counterclaims against Plaintiff, and states as follows:

## ANSWER TO COMPLAINT

iRobot denies the allegations and characterizations in Landmark's complaint unless expressly admitted in the following paragraphs:

## JURISDICTION AND VENUE

1.      iRobot admits that this is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.      iRobot admits only that because Plaintiff purports to bring an action arising under the patent laws of the United States, this Court has subject matter jurisdiction as to iRobot. iRobot denies the remaining allegations contained in Paragraph 2 of the Complaint.

3.      iRobot denies the allegations contained in Paragraph 3 of the Complaint.

4.      iRobot denies the allegations contained in Paragraph 4 of the Complaint.

## PARTIES

5.      iRobot is without sufficient information to either admit or deny the allegations in Paragraph 5 of the Complaint.

6.      iRobot admits that it is a Delaware corporation with a principal place of business in Bedford, Massachusetts.  iRobot further admits that it sells robots via the Internet website located at http://www.irobot.com/us/.  iRobot denies the remaining allegations in paragraph 6 of the Complaint.

## FACTS

7.      iRobot admits that the face page of United States Patent No. 5,576,951 ("the '951 patent") indicates that it is entitled "Automated Sales and Services System" and was issued by the United States Patent and Trademark Office on November 19, 1996.  iRobot also admits that the face page of the '951 patent indicates that Lawrence B. Lockwood was the inventor of the '951 patent.  iRobot is without sufficient knowledge or information to form a belief as to the truth or accuracy of the remaining allegations in Paragraph 7 of the Complaint.  They are, therefore, denied.

8.      iRobot admits that the face page of United State Patent No. 7,010,508 ("the '508 patent") indicates that it is entitled "Automated Multimedia Data Processing Network" and was issued by the United States Patent and Trademark Office on March 7, 2006.  iRobot also admits that the face page of the '508 patent indicates that Lawrence B. Lockwood was the inventor of the '508 patent.  iRobot is without sufficient knowledge or information to form a belief as to the

truth or accuracy of the remaining allegations in Paragraph 8 of the Complaint.  They are, therefore, denied.

9.      iRobot admits that on or about September 28, 2012, iRobot received a letter from Landmark in which Landmark proposed licensing the '951 patent and the '508 patent to iRobot. iRobot denies the remaining allegations in paragraph 9 of the Complaint.

10.     iRobot denies the allegations contained in Paragraph 10 of the Complaint.

## FIRST CLAIM FOR RELIEF

### Direct Infringement of U.S. Patent No. 5,576,951

11.     Paragraph 11 does not require a response by iRobot.

12.     iRobot is without sufficient knowledge or information to form a belief as to the truth or accuracy of the allegations contained in Paragraph 12 of the Complaint.  They are, therefore denied.

13.     iRobot denies the allegations against it in Paragraph 13 of the Complaint.

14.     iRobot denies the allegations against it in Paragraph 14 of the Complaint.

15.     iRobot denies the allegations against it in Paragraph 15 of the Complaint.

16.     iRobot denies the allegations against it in Paragraph 16 of the Complaint.

17.     iRobot denies the allegations against it in Paragraph 17 of the Complaint.

18.     iRobot denies the allegations against it in Paragraph 18 of the Complaint.

## SECOND CLAIM FOR RELIEF

### Inducing Infringement of U.S. Patent No. 5,576,951

19.     Paragraph 19 does not require a response by iRobot.

20.     iRobot denies the allegations against it in Paragraph 20 of the Complaint.

21.     iRobot denies the allegations against it in Paragraph 21 of the Complaint.

22.     iRobot denies the allegations against it in Paragraph 22 of the Complaint.

23.     iRobot denies the allegations against it in Paragraph 23 of the Complaint.

### THIRD CLAIM FOR RELIEF

**Direct Infringement of U.S. Patent No. 7,010,508**

24.     Paragraph 24 does not require a response by iRobot.

25.     iRobot is without sufficient knowledge or information to form a belief as to the truth or accuracy of the allegations contained in Paragraph 25 of the Complaint.  They are, therefore denied.

26.     iRobot denies the allegations against it in Paragraph 26 of the Complaint.

27.     iRobot denies the allegations against it in Paragraph 27 of the Complaint.

28.     iRobot denies the allegations against it in Paragraph 28 of the Complaint.

29.     iRobot denies the allegations against it in Paragraph 29 of the Complaint.

30.     iRobot denies the allegations against it in Paragraph 30 of the Complaint.

31.     iRobot denies the allegations against it in Paragraph 31 of the Complaint.

### FOURTH CLAIM FOR RELIEF

**Inducing Infringement of U.S. Patent No. 7,010,508**

32.     Paragraph 32 does not require a response by iRobot.

33.     iRobot denies the allegations against it in Paragraph 33 of the Complaint.

34.     iRobot denies the allegations against it in Paragraph 34 of the Complaint.

35.     iRobot denies the allegations against it in Paragraph 35 of the Complaint.

36.     iRobot denies the allegations against it in Paragraph 36 of the Complaint.

### JURY DEMAND

37.     iRobot admits that Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

38.     iRobot denies that Plaintiff is entitled to any relief requested in its Prayer for Relief because it does not infringe any valid, enforceable claim of either the '951 patent or the '508 patent (collectively, the "patents-in-suit").

39.     Landmark is not entitled to injunctive relief with respect to any of the patents-in-suit because any injury to Landmark is not immediate nor irreparable, and Landmark has an adequate remedy at law.

## DEFENSES

40.     iRobot's affirmative and other defenses are listed below.  iRobot reserves the right to amend its Answer to add additional defenses consistent with the facts discovered in the case.

## iROBOT'S FIRST DEFENSE
## (FAILURE TO STATE A CLAIM)

41.     Landmark's Complaint fails to state a claim upon which relief can be granted against iRobot.

## iROBOT'S SECOND DEFENSE
## (NON-INFRINGEMENT)

42.     iRobot does not and has not infringed, either directly, contributorily, or by inducement, any valid claim of the patents-in-suit.

## iROBOT'S THIRD DEFENSE
## (INVALIDITY)

43.     Each of the claims of the patents-in-suit is invalid for failure to satisfy the conditions of patentability as specified under one or more section of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, 112, and/or 256.

**iROBOT'S FOURTH DEFENSE**
**(PROSECUTION HISTORY ESTOPPEL)**

44.     On information and belief, by reasons of statements and representations made by the inventor or its assignor(s) to the United States Patent and Trademark Office during the prosecution of applications for issuance of the patents-in-suit, or by reason of prior acts, Landmark is estopped from asserting infringement of the patents-in-suit under the doctrine of equivalents.

**iROBOT'S FIFTH DEFENSE**
**(WAIVER, LACHES, ESTOPPEL, ACQUIESCENCE)**

45.     Landmark is barred in whole or in part from asserting the patents-in-suit against iRobot by the doctrine of waiver, laches, estoppel, and/or acquiescence.

**iROBOT'S SIXTH DEFENSE**
**(ADEQUATE REMEDY AT LAW)**

46.     Landmark is not entitled to injunctive relief because any alleged injury to Landmark is not immediate or irreparable, and Landmark has an adequate remedy at law.

**iROBOT'S SEVENTH DEFENSE**
**(PROSECUTION LACHES)**

47.     Landmark is barred from asserting the patents-in-suit against iRobot by the doctrine of prosecution laches.

**iROBOT'S EIGHTH DEFENSE**
**(FAILURE TO PROVIDE NOTICE)**

48.     Landmark's claim for relief is limited in whole or in part by its failure to comply with the requirements of 35 U.S.C. 271(b) and (c), 284 and/or 287.

**iROBOT'S NINTH DEFENSE**
**(INEQUITABLE CONDUCT)**

49.     The '951 patent is unenforceable by reason of inequitable conduct committed before the United States Patent and Trademark Office ("USPTO").

**First Instance of Inequitable Conduct:  Intentionally Withholding From The USPTO That Claims Were Copied**

50.     The '951 patent issued on November 19, 1996.  The '951 patent issued from U.S. Patent Application No. 08/210,301 filed on March 16, 1994 ("the '951 patent application"), the sole named inventor of the '951 patent (and all of the applications in the chain of applications leading to the issuance to the '951 patent) is Lawrence B. Lockwood ("Lockwood").

51.     United States Patent No. 5,241,671 ("the Reed patent") was filed on October 26, 1989 and issued on August 31, 1993.  As such, the Reed patent issued more than six months before the '951 patent application was filed and would constitute prior art to any claims of the '951 patent that are not entitled to an earlier priority date vis-à-vis the parent applications.

52.     In November 1993, Compton's NewMedia, Inc., the patent holder of the Reed patent, announced that it had been granted a patent in August giving it control over popular techniques for search for information on multimedia database, such as those on CD-ROMs.

53.     On information and belief, major newspapers across the country, including the Los Angeles Times, the New York Times, and the Chicago Tribune, ran stories about the Reed patent and its broad scope.

54.     On December 17, 1993, Patent Commissioner Bruce Lehman acknowledged that the patent "has prompted a strong and concerned reaction in a particularly dynamic and changeable industry" and announced that the USPTO would reexamine the Reed patent without a formal third-party request.  Patents, Reexamination, 47 PTCJ 177 (BNA) No. 1150, at 177 (Dec. 1993).

55.     On March 16, 1994, Lockwood filed the '951 patent application.  Eleven of the Twelve claims were identical to claims in the Reed patent:

| Reed patent as issued on Aug. 31, 1993 | '951 patent application filed on Mar. 16, 1994 |
| --- | --- |
| Claims 1-6 | Claims 1-6 (identical) |
| Claim 9 | Claim 7 (identical) |
| Claim 25 | Claim 8 (identical) |
| Claim 26 | Claim 9 (identical) |
| Claim 28 | Claim 10 (identical) |
| Claim 39 | Claim 11 (identical except for what appeared to be a typo omitting the phrase "textual search entry path means for searching said") |

56.     As part of the original '951 patent application, on March 16, 1994, Lockwood signed a declaration stating that he had "reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above" and acknowledged the "duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.56(a)." *See* March 16, 1994 Inventor Declaration.

57.     On the date the '951 patent application was filed, Lockwood did not disclose the Reed patent.

58.     On the date the '951 patent application was filed, Lockwood's prosecution counsel, Henri J.A. Charmasson and John D. Buchaca (collectively, "prosecution counsel"), did not disclose the Reed patent.

59.     On the date the '951 patent application was filed, Lockwood and/or his prosecution counsel (collectively "the applicants") did not disclose to the USPTO that 11 of the '951 patent's claims were copied verbatim from the Reed patent.

60.     On the date the '951 patent application was filed, the applicants did not disclose to the USPTO that 11 of the '951 patent's claims were copied verbatim from the Reed patent.

61.     On May 23, 1994, the applicants submitted the Reed patent in an Information Disclosure Citation, more than two months after the initial application was filed.  Again, Messrs. Charmasson and Buchaca did not disclose the verbatim copying of the claims to the USPTO.

62.     Lockwood and his prosecution counsel never disclosed to the USPTO, at any point in time during prosecution of the '951 patent application, that the '951 patent application contained claims copied from the Reed patent.

63.     Independent claim 1 is illustrative of what was copied from the Reed patent. Claim 1 from the Reed patent (as issued on August 31, 1993) and claim 1 from the original '951 patent application both claim:

1. A computer search system for retrieving information, comprising:

means for storing interrelated textual information and graphical information;

means for interrelating said textual and graphical information;

a plurality of entry path means for searching said stored interrelated textual and graphical information, said entry path means comprising:

textual search entry path means for searching said textual information and for retrieving interrelated graphical information to said searched text;

graphics entry path means for searching said graphical information and for retrieving interrelated textual information to said searched graphical information;

selecting means for providing a menu of said plurality of entry path means for selection;

processing means for executing inquiries provided by a user in order to search said textual and graphical information through said selected entry path means;

indicating means for indicating a pathway that accesses information related in one of said entry path means to information accessible in another one of said entry path means;

accessing means for providing access to said related information in said another entry path means; and

output means for receiving search results from said processing means and said related information from said accessing means and for providing said search results and received information to such user.

64.    The claims copied from the Reed patent and filed in the '951 patent application on March 16, 1994 were not entitled to a priority date of May 24, 1984, as asserted by the '951 patent application, or to any other earlier patent application to which the '951 patent application claims priority.   For example, no parent application disclosed "graphics entry path means for searching said graphical information," or "indicating means for indicating a pathway that accesses information related in one of said entry path means to information accessible in another one of said entry path means," as required for claim 1.   Claims 2-9, as originally drafted, depended from claim 1 and therefore also could not have been entitled to an earlier priority date.

65.    The claims copied from the Reed patent included claim elements that were logical in the context of the Reed patent but made no sense in relation to the parent patents to which the '951 patent application was claiming priority.   For example, the terms "textual entry paths" and "graphical entry paths" are described at length in the Reed patent, which is directed to user-friendly ways to search a multimedia database with textual and graphical information.   The invention described in Reed purportedly enables users to find and obtain information quickly and efficiently, such as textually searching for information by entering search terms or by browsing a list of text items and selecting an item for which the user would like more information, or graphically searching for information by moving around a map.   *See* Reed patent at col. 4:3 - col. 5:6.   The entry paths are interrelated "such that textual information is fully accessible from the graphical entry paths and the graphic information is fully accessible from the textual entry paths" without performing separate searches.   *Id.* at col. 4:3-7.   Thus, in the Reed patent, when a textual

search is conducted, the system provides access to textual information of interest as well as any related graphic information available, and vice versa.

66.     The parent applications of the '951 patent are generally related to automated sales terminals with no searching capabilities.  *See, e.g.*, U.S. Application No. 06/822,115 ("Automatic Loan Processing Terminal System"); the '359 patent ("Automatic Information, Goods And Services Dispensing System").

67.     For example, in the '359 parent patent, a "factitious [*sic*] agent created by audio-visual devices from prerecorded sound, images and synthesized data" solicits information from the customer to provide an insurance quotation.  '359 patent at col 1:37-41; col. 2:10-15.  The customer is asked to select the type of insurance quotation desired and is then asked follow-up questions such as age, gender, and marital status.  *Id.* at col. 6:51-65.  The customer enters responses on a touch pad, and the responses are shown on the monitor screen and repeated by the voice synthesizer for customer verification.  *Id.*  There is not a single mention of "entry path" in the entire specification of the '359 parent patent, let alone any explanation as to what "textual entry paths" or "graphical entry paths" might mean.

68.     On information and belief, no other parent application to the '951 patent comes close to disclosing "entry paths" for searching interrelated textual and graphical information.

69.     Pursuant to 37 C.F.R. § 1.56, all individuals associated with the filing and prosecution of the '951 patent, including without limitation Lockwood, had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to be material to patentability.

70.     Under the Manual for Patent Examining Procedure, "[w]here claims are copied or substantially copied from a patent, 37 CFR 1.607(c) requires applicant shall at the time he or she

presents the claim(s), identify the patent and the numbers of the patent claims.  Clearly, the information required by 37 CFR 1.607(c) as to the source of copied claims is material information under 37 CFR 1.56 and failure to inform the USPTO of such information may violate the duty of disclosure."  MPEP 2001.06(d).

71.    37 C.F.R. § 1.607(c) requires that "[w]hen an applicant [for patent] presents a claim which corresponds exactly or substantially to a claim of a patent, the applicant shall identify the patent and the number of the patent claim...."

72.    37 C.F.R. § 10.23(c)(7) states that "[k]nowingly withholding from the [USPTO] information identifying a patent or patent application of another from which one or more claims have been copied" constitutes disreputable or gross misconduct.

73.    On information and belief, the applicants engaged in inequitable conduct before the USPTO by intentionally withholding from the patent office with deceptive intent information material to the patentability of the '951 patent.

74.    On information and belief, the applicants filed the '951 patent application while knowing that the application contained claims that were not supported by any parent applications and were clearly derived from an unrelated patent already issued to another inventor.   Further, Lockwood and/or prosecution counsel failed to disclose to the USPTO that claims in the '951 patent application had been copied verbatim from the Reed patent.

75.    Specifically, as described above, claims 1-11 in the as-filed '951 patent application were copied verbatim from claims in the Reed patent.  Thus, the applicants' conduct was material at least to the patentability of all limitations of those claims.

76.     Disclosure about the copying of the claims from the Reed patent would have been important to a reasonable patent examiner evaluating the patentability of one or more claims of the '951 patent.

77.     The prior art Reed patent would have established, by itself or in combination with other information, a prima facie case of unpatentability of one or more claims of the '951 patent. The applicants had a duty to disclose such copying of the claims from the Reed patent, as the Reed patent disclosed every claim element for eleven out of the twelve original claims.

78.     In addition, had the examiner known that the '951 patent application included claims copied from the Reed patent, the examiner could have suggested that the USPTO initiate an interference proceeding between the '951 patent application and the Reed patent, in which the '951 patent application's claims of priority to earlier applications would have been scrutinized. *See* MPEP § 2304.

79.     On information and belief, the '951 patent would not have issued if the applicant's had notified the USPTO of the copied claims.

80.     On information and belief, the applicants learned about the Reed patent prior to filing the '951 patent application.  Given the verbatim copying of the claims from the Reed patent into the '951 patent application, the applicants must have known about the Reed patent.

81.     On information and belief, the applicants copied the claims from the Reed patent with hopes of getting the same broad claims issued for their own benefit.

82.     On information and belief, the applicants filed the '951 patent application knowing that the inventions purportedly covered by claims they copied were first conceived by someone else.

83.     When he filed the '951 patent application, Mr. Charmasson was an experienced patent attorney. He became a registered patent attorney in 1974, and directly prosecuted over 300 patents to issue, as well as many applications that were abandoned. On information and belief, prosecution counsel has filed and prosecuted well over one hundred patent applications that claimed to be a continuation, continuation-in-part, or divisional of a previous application.

84.     On information and belief, the applicants' failure to disclose the copying of the claims from the Reed patent was intentional and was intended to mislead and/or deceive the USPTO.  The single most reasonable inference able to be drawn from this evidence is that the applicants were continuing in their efforts to deceive the patent examiner regarding the patentability of the claims of the '951 patent, constituting egregious misconduct.

85.     On information and belief, the applicants obfuscated the connection between the claim language of the '951 patent application and Lockwood's alleged invention by not disclosing at any time during prosecution that 11 claims were copied from the Reed patent.  The single most reasonable inference able to be drawn from this evidence is that the applicants were continuing in their efforts to deceive the patent examiner regarding the patentability of the claims of the '951 patent, constituting egregious misconduct.

86.     On information and belief, the applicants obfuscated the connection between the claim language of the '951 patent application and Lockwood's alleged invention by introducing, during prosecution, citations to parent applications that bore no relevance to the meaning of the claim terms.  The single most reasonable inference able to be drawn from this evidence is that the applicants were continuing in their efforts to deceive the patent examiner regarding the patentability of the claims of the '951 patent, constituting egregious misconduct.

**Second Instance of Inequitable Conduct: False Claim of Priority in the '973 Application**

87.     35 U.S.C. § 120 allows for a patent application to claim priority to an earlier-filed application only where the earlier-filed application discloses the invention in the later-filed application in the manner provided by 35 U.S.C. § 112.

88.     MPEP § 201.08 defines a continuation-in-part application as "an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the said earlier nonprovisional application."

89.     The '951 patent claims priority to May 24, 1984 — the filing date of U.S. Patent 4,567,359 — through a series of applications including U.S. Patent Application Nos. 06/822,115 (the '115 application"), 07/152,973 (the '973 application"), 07/396,283 (the '283 application"), and 08/116,654 (the "'654 application").

90.     The applicants' claim of a May 24, 1984 priority date was based on the applicants' representations to the USPTO that the '115, '973, '283, and '654 applications were an unbroken chain of continuation or continuation-in-part applications leading back to the original application filed on May 24, 1984.

91.     Specifically, in applications filed on February 18, 1988, August 21, 1989, September 3, 1993, and March 16, 1994, the applicants' represented to the USPTO that the '973 application is a continuation-in-part of the '115 application.

92.     This representation was false since the specification of the '973 application does not share any substantive overlap with the specification of the '115 application nor does it repeat any substantial portion of the '115 application. In fact, the '973 application was an entirely new application, with brand new figures and a completely new specification.

15

93.     Therefore, the applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '115 application at any point during the prosecution of the '951 patent application. In addition, because the '115 application was abandoned long before the '951 patent application was filed, the applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '115 application in the '951 patent application.

94.     As such, the applicants' claim of priority to May 24, 1984, through the '973 application was false.

95.     The USPTO takes a patent applicant's representations regarding priority as true and does not conduct an independent inquiry into whether the earlier application satisfies the requirements of 35 U.S.C. § 120 or 35 U.S.C. § 112.

96.     Therefore, such representations regarding claim priority to the USPTO are critical to a fair and honest examination because the USPTO conducts its prior art search as if the pending application is entitled to the priority date claimed by the applicants.

97.     The applicants' priority claim to the '115 application, when that application shares no substantive overlap with later applications that claim priority to the '115 application, constitutes affirmative egregious misconduct.

98.     The applicants' false priority claim is also inherently material to the patentability of all claims of the '951 patent because the USPTO limited the scope of its prior art search to an earlier date than what the applicants were actually entitled to.

99.     Specifically, because several limitations in each independent claim of the '951 patent have 35 U.S.C. § 112 support, if at all, only in the '973 application, the applicants' false priority claim is material because it prevented the USPTO from considering prior art at least between 1984 (the earliest priority date claimed by the '951 patent) and 1988 (the date of the

'973 application). As one example, the limitation "program means for controlling the display on said display device of inquiries and acceptable answers" in claim 10 of the '951 patent has 35 U.S.C. § 112 support only in the '973 application, if at all.

100.    Given the rapid development of technology at issue at the time of the examination of the '951 patent application and the '654, '283, '973 and '115 applications, the applicants' false claim of priority precluded the USPTO from examining the later-pending applications against later relevant prior art.

101.    On information and belief, the '951 patent would not have issued if the applicants had not made a false priority claim to the '115 application.

102.    On information and belief, the applicants' false statements to the USPTO regarding priority were made with the intent to mislead the USPTO. Alternatively, such intent to mislead the USPTO is the only reasonable inference from the totality of the circumstances alleged in this complaint, including the patent prosecution experience of prosecution counsel and the lack of any substantive overlap in applications that might otherwise have supported the applicant's representations regarding priority.

103.    Therefore, the applicants' false priority claims related to the '115 application constitute inequitable conduct that renders the '951 patent unenforceable.

**Third Instance of Inequitable Conduct: False Claim of Priority in the '283 Application**

104.    In addition to the false claim of priority related to the '973 application, the applicants also misrepresented the content and priority related to the '283 application. Specifically, in applications filed on August 21, 1989, September 3, 1993, and March 16, 1994, the applicants represented to the USPTO that the claims presented in the '951 patent are entitled to claim priority to May 24, 1984, because the '283 application is a continuation-in-part of the '973 application.

105.    This representation was false, as the specification of the '283 application does not share any substantive overlap with the specification of the '973 application nor does it repeat some substantial portion of the '973 application.

106.    Therefore, the applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '973 application at any point during the prosecution of the applications that led to the issuance of the '951 patent. In addition, because the '973 application was abandoned long before the '951 patent application was filed, the applicants were not entitled to claim priority under 35 U.S.C. § 120 to the '973 application in the '951 patent application.

107.    As such, the applicants' claim of priority to May 24, 1984, through the '283 application was false.

108.    As noted above, this false claim of priority to the '973 application, when that application shares no substantive overlap with later applications that claim priority to the '973 application, constitutes affirmative egregious misconduct.

109.    The applicants' false priority claim is inherently material to the patentability of all claims of the '951 patent because the USPTO limited the scope of its prior art search to an earlier date than that to which the applicants were entitled.

110.    Specifically, because several limitations in each independent claim of the '951 patent have 35 U.S.C. § 112 support, if at all, only in the '283 application, applicants' false priority claim is material because it prevented the USPTO from searching for prior art between 1984 (the earliest priority date claimed by the '951 patent) and 1989 (the filing date of the '283 application). As one example, the limitation "accessing means for providing access to said related information in said another entry path means" in claim 1 of the '951 patent has 35 U.S.C. § 112 support only in the '283 application, if at all.

111.     Given the rapid development of technology at issue at the time of the examination of the '951 patent application and the '654, '283, '973 and '115 applications, the applicants' false claim of priority precluded the USPTO from examining the later-pending applications against later relevant prior art.

112.     On information and belief, the '951 patent would not have issued if the applicants had not made a false priority claim to the '973 application.

113.     On information and belief, applicants' false statements to the USPTO regarding priority were made with the intent to mislead the USPTO. Alternatively, such intent to mislead the USPTO is the only reasonable inference from the totality of the circumstances alleged in this complaint, including patent prosecution experience of Prosecution counsel and the lack of any substantive overlap in applications that might otherwise have supported the applicants' representations regarding priority.

114.     Therefore, applicants' false priority claims related to the '973 application constitute inequitable conduct that renders the '951 patent unenforceable.

**Fourth Instance of Inequitable Conduct: Misrepresentations Regarding Content and Priority of '951 Patent Application**

115.     On March 16, 1994, prosecution counsel submitted to the USPTO the '951 patent application, in which he stated that the '951 patent application was a continuation of the '654 application and also a continuation of U.S. Application No. 08/096,610 (the "'610 application").

116.     On November 28, 1994, the USPTO issued an Office Action in which it notified the applicants that the '951 patent application could not be a continuation of the '654 application because the disclosure of the '951 patent application is not the same as the disclosure of the '654 application.

117.    This instruction was consistent with MPEP § 201.07, which provides that for an application to be a "continuation," "the disclosure presented in the continuation must be the same as that of the original application; i.e., the continuation should not include anything which would constitute new matter if inserted in the original application."

118.    In response, the applicants submitted an Amendment and Reply on February 10, 1995 in which he stated that the '951 patent application is a continuation-in-part of the '654 application and also a continuation-in-part of the '610 application. However, later in the same Amendment and Reply, the applicants again stated that the '951 patent application is a straight continuation of the '610 application and also a straight continuation of the '654 application.

119.    On September 26, 1995, the USPTO issued a second Office Action where the examiner pointed out that the '951 patent application cannot be a continuation-in-part and a continuation at the same time.

120.    On November 3, 1995, the applicants submitted a second Amendment and Reply, in which they stated that the '951 patent application is a continuation-in-part of the '654 application and a continuation-in-part of the '610 application because neither the '654 application nor the '610 application contained the full disclosure of the '951 patent application. However, in the same Amendment and Reply, the applicants represented to the USPTO that the '951 patent application is a straight continuation of the combination of the '654 and '610 applications.

121.    In so doing, the applicants represented to the USPTO that all matter in the '951 patent application can be found in either the '654 application or the '610 application. On the basis of this representation, the USPTO issued the '951 patent as a continuation of the combination of the '654 application and the '610 application.

122.    In conducting its examination of the '951 patent application, the USPTO made it clear that it took the applicants at his word, noting that the applicants' statements regarding priority were "taken automatically in good faith and candor; any discrepancies are a matter for the court."

123.    However, the applicants' statements specified above were not made in good faith and candor. Instead, they were false. Contrary to the applicants' representation to the USPTO that the '951 patent application is a combination of the '654 and '610 applications, the '951 patent application contains a substantial amount of disclosure that does not appear in either the '654 or '610 applications, including six figures and at least nine full columns of written description, specifically figures 12-17 of the '951 patent application and col. 1,1.56-col. 2,1. 63, col. 6,1. 36-col. 8, 1. 2, col. 11,11. 55-65, col. 15,11. 11-20, col. 16,11. 24-36, and col. 16,1. 43-col. 23,1.41 of the specification as it eventually issued in the '951 patent.

124.    The vast majority of the new matter added into the '951 patent application came verbatim from the '973 application and several limitations in each independent claim of the '951 patent have 35 U.S.C. § 112 support, if at all, only in the '973 or '283 applications. For this reason, applicants' false priority claim is material because it prevented the USPTO from considering prior art at least between 1984 (the earliest priority date claimed by the '951 patent) and 1989 (the date of the '283 application). As one example, the limitation "program means for controlling the display on said display device of inquiries and acceptable answers" in claim 10 of the '951 patent has 35 U.S.C. § 112 support only in the '973 application, if at all. As another example, the limitation "accessing means for providing access to said related information in said another entry path means" in claim 1 of the '951 patent has 35 U.S.C. § 112 support only in the '283 application, if at all.

125.    Mr. Charmasson was well-aware of the new matter in the '951 patent application that came from the '973 application. In fact, although he initially cited directly to the '973 application for Section 112 support, he later began citing solely to the portions of the '951 patent application that were copied directly from the '973 application without identifying the '973 application as the source of those cited portions.

126.    The applicants' misrepresentations as to the priority and content of the '951 patent application constitute affirmative egregious misconduct.

127.    The applicants' misrepresentations as to the priority and content of the '951 patent application are inherently material to the patentability of all claims of the '951 patent because the USPTO limited the scope of its prior art search to an earlier date than what the applicants were actually entitled to given the new matter in the '951 patent application. Thus, the applicants' misrepresentations regarding the content of the '951 patent application precluded the USPTO from examining the pending claims against later relevant prior art.

128.    On information and belief, the '951 patent would not have issued if the applicants had not made misrepresentations regarding the content and priority of the '951 patent application.

129.    On information and belief, the applicants misrepresentations as to the priority and content of the '951 patent application were made with the intent to mislead the USPTO. Alternatively, such intent to mislead the USPTO is the only reasonable inference from the totality of the circumstances alleged in this complaint, including patent prosecution experience of Prosecution counsel and the plain inclusion of new matter that did not appear in either of the earlier applications that formed the basis for the applicants' false claims.

## iROBOT'S COUNTERCLAIMS FOR DECLARATORY RELIEF

For its counterclaims against Landmark, iRobot alleges the following:

1.      iRobot is a Delaware corporation with its principal place of business in Bedford, Massachusetts.

2.      On information and belief, Landmark is a Texas limited liability company organized under the laws of the state of Delaware.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this counterclaim pursuant to 35 U.S.C. §§ 101 *et seq.*, 28 U.S.C. §§ 1331, 1338, and 2201, as they arise under the patent laws of the United States.

4.      By filing its Complaint, Landmark has consented to the personal jurisdiction of this Court.

5.      Venue is co-extensive with the Complaint.

## COUNT I

### (For Declaratory Judgment of Non-Infringement)

6.      On information and belief, Landmark represents that it owns United Stated Patent Nos. 5,576,951 and 7,010,508 (the "patents-in-suit"), and has asserted that certain acts by iRobot infringe these patents.

7.      iRobot repeats and realleges each and every allegation contained in paragraphs 1-6 of this counterclaim as if fully set forth herein.

8.      iRobot is not infringing, and has not infringed, directly, by inducement, contributorily, or in any way, any claim of the patents-in-suit.

9.      To resolve the legal and factual questions raised by Landmark, and to afford relief from the uncertainty and controversy that Landmark's accusations have precipitated, iRobot is entitled to a declaratory judgment that it does not infringe any claim of the patents-in-suit.

## COUNT II

### (For Declaratory Judgment of Invalidity)

10.      iRobot repeats and realleges each and every allegation contained in paragraphs 1-9 of this counterclaim as if fully set forth herein.

12.      The claims of the patents-in-suit are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, 112, and/or 256.

13.      To resolve the legal and factual questions raised by Landmark, and to afford relief from the uncertainty and controversy that Landmark's accusations have precipitated, iRobot is entitled to a declaratory judgment that the claims of the patents-in-suit are invalid.

## COUNT III

### (For Declaratory Judgment of Unenforceability)

14.      iRobot repeats and realleges each and every allegation contained in paragraphs 1-13 of this counterclaim as if fully set forth herein.

15.      The patents-in-suit are unenforceable under, without limitation, the doctrine of prosecution laches.

16.      In addition, on information and belief, the '951 patent is unenforceable by reason of inequitable conduct committed before the United States Patent and Trademark Office ("USPTO") as alleged in Paragraphs 49-129 of iRobot's Answer to Landmark's Complaint, which allegations are incorporated herein inclusive, as though fully set forth in this paragraph.

17.     To resolve the legal and factual questions raised by Landmark, and to afford relief from the uncertainty and controversy that Landmark's accusations have precipitated, iRobot is entitled to a declaratory judgment that the patents-in-suit are unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, iRobot respectfully requests that this Court enter judgment in its favor and grant the following relief:

(a)     A declaration that iRobot does not infringe any claim of U.S. Patent Nos. 5,576,951 and 7,010,508;

(b)     A declaration that U.S. Patent Nos. 5,576,951 and 7,010,508 are invalid;

(c)     A declaration that U.S. Patent Nos. 5,576,951 and 7,010,508 are unenforceable;

(d)     Dismissal of Landmark's claims in their entirety with prejudice;

(e)     A declaration that Landmark take nothing by way of its Complaint;

(f)     An order finding that this is an exceptional case and awarding iRobot its reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

(g)     An order awarding iRobot costs pursuant to 35 U.S.C. § 284; and

(h)     An order awarding such additional relief as the Court may deem just and proper under the circumstances.

## JURY REQUEST

iRobot requests a trial by jury on all issues so triable.

Dated: August 5, 2013

Respectfully submitted,


*/s/ Eric H. Findlay*
Eric H. Findlay
Texas Bar No. 00789886
FINDLAY CRAFT, LLP
6760 Old Jacksonville Highway, Suite 101
Tyler, TX 75703
Tel:  (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com

Mark P. Wine
CA State Bar No. 189897
Thomas J. Gray
CA  State Bar No. 191411
Benjamin S. Lin
CA State Bar No. 232735
Michael C. Chow
CA  State Bar No. 273912
Will H. Melehani
CA State Bar No. 285916
ORRICK HERRINGTON & SUTCLIFFE LLP
2050 Main St., Suite 1100
Irvine, CA 92614
Tel:  (949) 567-6700
Fax:  (949) 567-6710
mwine@orrick.com
tgray@orrick.com
blin@orrick.com
mchow@orrick.com
wmelehani@orrick.com


**ATTORNEYS FOR DEFENDANT iROBOT CORPORATION**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on  August 5, 2013 to all counsel of record who are deemed to have consented to electronic service *via* the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Eric H. Findlay*
Eric H. Findlay
