IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LANDMARK TECHNOLOGY, LLC, | § | |
| | § | |
| vs. | § | CASE NO. 6:13cv411 JDL |
| | § | |
| iROBOT CORPORATION. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant iRobot Corporation's ("iRobot") Motion to Stay Proceedings Pending Covered Business Method Patent Review (Doc. No. 40) ("Motion"). The matter is fully briefed. (Doc. Nos. 42, 43, & 44). Having fully considered the parties' arguments and for the reasons set forth herein, iRobot's Motion to Stay is **GRANTED IN PART**.

## BACKGROUND

On May 22, 2013, Plaintiff Landmark Technology, LLC ("Landmark") filed five separate lawsuits alleging infringement of U.S. Patent No. 5,576,951 ("the '951 Patent") and U.S. Patent No. 7,010,508 ("the '508 Patent) (collectively, "the patents-in-suit"). Several cases have since settled. In addition to iRobot, the remaining Defendants include Tempur-Pedic International, Inc. and Vitacost.com, Inc (collectively, "non-iRobot Defendants"). Landmark has since filed thirteen additional suits alleging infringement of the same patents.[1] The Court held a scheduling conference on October 23, 2013 (Doc. No. 31) for the May 22, 2013 suits, and a second scheduling conference is scheduled in February for the remaining Defendants. A *Markman* hearing related to the May 22, 2013 filed suits is scheduled for September 25, 2014 and pre-trial is scheduled for July 23, 2015. Doc. No. 39.

---

[1] A total of twelve additional non i-Robot Defendants remain including the Defendants in Case Nos. 6:13cv413, 6:13cv414, 6:13cv758, 6:13cv759, 6:13cv760, 6:13cv761, 6:13cv762, 6:13cv763, 6:13cv765, 6:13cv766, 6:13cv767, and 6:13cv769.

GSI Commerce Solutions, Inc. ("GSI"), a subsidiary of eBay, Inc. that provides systems and software for iRobot's accused instrumentality, filed two petitions with the Patent Trial and Appeals Board (PTAB) for post-grant review on November 4, 2013. MOT. at 1. Pursuant to Section 18(b) of the Leahy-Smith America Invents Act ("AIA"), the petitions seek findings of invalidity regarding the patents-in-suit under the Transitional Program for Covered Business Method Patents ("CBM Review"). *Id.;* AIA § 18. On November 26, 2013, iRobot filed the instant motion seeking a stay of proceedings pending the PTO's resolution of CBM Review. The PTO has thus far not granted review, but is expected to issue a decision before May of 2014.

## **LEGAL STANDARD**

Section 18 of the AIA establishes the Transitional Program for CBM Patents. 157 Cong. Rec. S1360-02(2011); AIA § 18. For purposes of the statute, a "covered business method" patent is defined as "a patent that claims a method or corresponding apparatus for performing date processing operations utilized in the practice, administration, or management of a financial product of service, except that the term does not include patents for technological inventions." 37 C.F.R. § 42.301(a); AIA § 18(d).

The transitional program provides a statutory stay provision under which a party may seek stay of a civil action alleging infringement of the CBM patent. AIA § 18(b)(1). Section 18 "places a very heavy thumb on the scale in favor of a stay being granted." 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer). "Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay." *Id.* Nevertheless, staying a patent case during reexamination is discretionary, and such determination must rest on the facts of each particular case." *Sightsound Techs., LLC v. Apple,* No. 11-1292,

2013 WL 2457284 at *1 (W.D. Penn. June 6, 2013) (citing *Nippon Steel & Sumito Metal Corp. v. POSCO & POSCO Am. Corp.,* No. 12-2429, 2013 U.S. Dist. LEXIS 62710, at *11-12 (D.N.J. May 2, 2013).

The courts are directed to base their decision as to whether or not to grant such a stay on four factors: "(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial; (B) whether discovery is complete and whether a trial date has been set; (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1). This four-factor test "closely resembles the stay analysis courts have applied in assessing a motion to stay pending *inter partes* or *ex parte* reexamination by the [patent office]." 157 Cong. Rec. S1350-02; *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.,* 922 F.Supp.2d 486, 489 (D. Del. Feb. 5, 2013). The only difference between the CBM test and the court's traditional test is the addition of the fourth factor, which requires courts to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1). Some courts interpret this additional consideration as "[having] ease[d] the movant's task of demonstrating the need for a stay." *Market-Alerts,* 922 F.Supp. 2d at 489=490; *see also Progressive Casualty Ins. Co. v. Safeco Ins. Co., et al.,* Nos. 1:10-cv-13770, 1:11-cv-00082, 1:12-cv-01068, 1:12-cv-01070, 2013 WL 1662952 (N.D. Ohio April 17, 2013); *Zillow v. Trulia,* No. C-12-1549-JLR, 2013 WL 5530573 (W.D. Wash. Oct. 7, 2013).

Although legislative history does emphasize the importance Congress attached to stays pending CBM Review, the Court notes that "Congress did not provide an automatic stay provision for the transitional program. Rather, the statute instructs the Court to consider all four

factors in deciding whether or not to grant a stay. Further, there has been little dispute among district courts that Congress did not intend to alter the way in which district courts assess the first three factors." *VirtualAgility, Inc. v. Salesforce.com, Inc., et al.,* No. 2:13-cv-00011-JRG (E.D. Tex. Jan. 9, 2014) (citing *Market-Alerts,* F.Supp. at 490, n.6; *Zillow,* 2013 WL 5530573 at *3). Thus, staying cases pending CBM review remains within the court's discretion, and "such determination must rest on the facts of each particular case." *See Sightsound*, 2013 WL 2457284 at *1. Whether to ultimately grant or deny such a stay flows from the court's inherent authority to manage its own trial docket. *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936).

## DISCUSSION

As noted above, the Court has inherent discretion whether to grant a stay in patent litigation. *See Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). A final decision is made with "an eye toward maintaining an even balance between the competing interests of the parties at issue." *TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646, 2013 WL 5701529, at *2 (D. Del. Oct. 21, 2013) (citing *SoftView LLC v. Apple, Inc.,* C.A. No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *6-7 (D. Del. July 26, 2012). The Court will discuss each of the statutory factors as outlined in § 18(b) below, addressing the parties' specific argument where applicable.

**I.     Simplification of Issues**

The first statutory factor requires the Court to consider whether a stay will simplify the issues in question and streamline the trial. As other courts have previously recognized, staying an infringement case pending review can simplify litigation in several ways:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if the patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Market-Alerts,* 922 F.Supp.2d at 491 (citing *Gioello Enters. Ltd. v. Mattel, Inc.,* No. 99-375-GMS, 2001 WL 125340, at *1 (D.Del. Jan. 29, 2001).

iRobot argues that CBM review will simplify the issues in this case because the review will most likely lead to the invalidation or amendment of one or more of the patents' claims. MOT. at 4. Landmark argues that the patents-in-suit have passed through reexamination utilizing similar prior art on two occasions, emerging with all claims confirmed without any amendments. RESP. at 8-9. Additionally, Landmark questions whether CBM Review is appropriate in this suit as CBM Review is "'narrow,' and limited to 'business method patents' related to 'financial products or services' – and excludes 'technological innovations.'" *Id*. at 9 (citing AIA § 18(d)(1)).

The Court finds Landmark's arguments unpersuasive. The threshold issue of whether CBM review in this case is appropriate is typically an issue for the PTAB to decide, not this Court. *See Sightsound,* 2013 WL 2457284 at *1. Further, the fact that the patents-in-suit have passed through reexamination does not compel the conclusion that CBM Review is superfluous. As opposed to *ex parte* reexamination procedures that consider a patent's validity in light of

particular prior art, CBM Review allows a petitioner to argue for invalidity before a panel of administrative law judges and also allows for § 112 challenges. 35 U.S.C. § 302 (requiring ex parte reexaminations be requested on the basis of prior art); 77 Fed. Reg. 6879 (setting forth Trial Practice before the PTAB); 37 C.F.R. §§ 42 & 90. A decision by the PTO of whether to grant CBM Review is expected in May of 2014, four months before the scheduled *Markman* hearing and before the parties begin claim construction briefing. RESP. at 7; Doc. No. 39. Should the PTO deny iRobot's petition for CBM Review, or grant CBM Review with a narrow scope, the Court can lift the stay and resume litigation with minimal delay. Therefore, this factor weighs in favor of granting a temporary stay.

## II.   Stage of the Litigation

The second factor, which has the court consider how far litigation has progressed, likewise favors a stay. AIA § 18(b)(1)(B). Staying a case at an early juncture can "advance judicial efficiency and maximize the likelihood that neither the [c]ourt nor the parties expend their assets addressing invalid claims." *Market-Alerts,* 922 F.Supp.2d at 494, (citing *SenoRx, Inc, v. Hologic, Inc.,* No. 12-173-LPS-CJB, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013)). When confronted with a motion to stay in later stages of the case, however, "the [c]ourt and parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion." *Id.*

While the Court previously denied a stay pending a decision by the PTO on a non-CBM *inter partes* review petition (*American Vehicular Sciences LLC v. Toyota Motor Corporation, et al.,* No. 6:12-cv-404), the Court in the present case has merely held a scheduling conference, issued several routine and administrative orders, and discovery has just begun. In fact, the

parties have just served their disclosures in compliance with P.R. 4-1. Doc. Nos. 45 & 46. The Court and parties have yet to address discovery exchanges, claim construction, depositions, expert discovery, and case dispositive motions. As alluded to in the previous section, a decision by the PTO of whether to grant CBM Review is expected four months before the scheduled *Markman* hearing. Because the motion to stay was filed so early in the litigation and the Court can lift the stay with minimal delay, this factor also weighs in favor of granting at least a temporary stay.

### III. Undue Prejudice to Plaintiff

The Court is next instructed to consider the potential for a stay to unduly prejudice the plaintiff or present a clear tactical disadvantage. AIA § 18(b)(1)(C). iRobot argues that Landmark will not suffer undue prejudice or disadvantage if the Court grants a stay because Landmark is a non-practicing entity that does not sell products that practice the asserted patent. MOT. at 6. Should iRobot eventually be found to have infringed, Landmark can be adequately compensated by money damages for any harm suffered during the PTO proceedings. *Id.* at 6-7. Further, the CBM Review process initiated by Congress is required by law to conclude one year after initiation and only extendable by six months with a showing of good cause. *Id.;* 37 C.F.R. §§ 42.301, 42.200(c). Finally, iRobot argues that this case is in its very early stages. MOT. at 7. Landmark counters that a stay and resulting delay would run directly against its recognized interest in the timely enforcement of its patent rights, that it is possible that the CBM Review proceedings and subsequent appeal could take longer than one year, and that witnesses may become unavailable, memories may fade and evidence may be lost pending the conclusion of the CBM Review proceedings. RESP. at 12-13.

The Court recognizes that Landmark has a recognized interest in the timely enforcement of its patent rights. *Ambato Media, LLC v. Clarion Co., Ltd,* 2:09-cv-242, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012); *Voltstar Technologies, Inc. v. Superior Commc'ns, Inc.,* 2:12-cv-00082, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013). However, the Court also recognizes the reduced time-frame allotted by Congress for CBM Review completion. Moreover, iRobot's filing of the motion to stay merely five months into the litigation does not appear to be dilatory. Since the parties and the Court will have a definitive answer from the PTO whether it will grant CBM Review four months prior to the scheduled *Markman* hearing, the Court finds this factor neutral. While a delay in proceeding with its case may be somewhat prejudicial to Landmark, it is not unduly prejudicial.

## IV. Burden of Litigation

Section 18 of the AIA adds a fourth factor to the traditional stay analysis, instructing the court to consider "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D). It appears the intent of this provision was to "ensure that district courts would grant stays pending CBM review proceedings at a higher rate than they have allowed stays pending *ex parte* reexaminations." *Market-Alerts,* 944 F.Supp.2d at 496. Further the Court considers the strong language proffered in the legislative history of the AIA where in considering this fourth factor, Section 18 "places a very heavy thumb on the scale in favor of a stay being granted" and an expectation that "if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination. 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer). "Since the entire purpose of the transitional

program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Charles Schumer).

iRobot argues that a stay would "spare both parties the burden of unnecessary litigation while the patents are being tested before the PTAB." MOT. at 8-9. Landmark counters that the patents-in-suit have been through reexamination and that related cases would still progress regardless of the pending CBM Reviews. RESP. at 13. The Court finds Landmark's argument unpersuasive, particularly in light of the strong language regarding Congressional intent that this factor weigh heavily in favor of a stay. As previously discussed, the PTO's reexamination procedure and CBM Review procedure are different, and could yield different results. Thus this factor weighs in favor of granting a stay.

## CONCLUSION

Having considered the submissions of the parties and for the reasons set forth herein, the request for stay is **GRANTED** until the PTO issues a determination of whether it will grant CBM Review. iRobot is directed to provide the Court with a status report within ten days of the PTO's decision. Should the PTO grant CBM Review, iRobot is to discuss in their status report how completion of the Review will simplify the issues before the Court. Landmark may respond within five days of iRobot's filing. Depending on the scope granted by the PTO, the Court will at that time determine whether the stay will continue until the completion of the CBM Review or if the case will proceed in accordance with the Docket Control Order.[2]

---

[2] Should the PTO grant CBM Review, the Court will consider the estoppel effect on the non-moving Defendants in addition to the scope of the Review in deciding whether to continue the stay. A stay beyond the PTO's decision may only be beneficial if all Defendants agree that they are challenging validity of the patents through CBM Review with the PTAB and not in Court. The Court recognizes that as the petitioner in CBM Review, iRobot may not later assert that a claim is invalid on any ground raised in CBM Review. However, the potential estoppel effect on the nonmoving Landmark Defendants is unclear. Therefore, if iRobot seeks a further stay based on the grant of their CBM Review, the Court may order all nonmoving related Landmark Defendants to file within ten days of iRobot's

9

**So ORDERED and SIGNED this 24th day of January, 2014.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

filing, no more than five pages indicating whether that party will (1) stipulate to the same estoppel effect that will apply against iRobot resulting from the CBM Review or some variation thereof, and (2) stipulate to be bound as soon as the PTO issues an appealable decision rather than waiting until the appeal process is completed.